# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-161 |
| | ) | |
| STEPHAN D. COTTON, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Judgment on the Pleadings, filed by Plaintiff, the United States of America ("United States"), acting on behalf of the United States Department of Agriculture ("USDA"), which was filed on August 5, 2011 (DE #10). For the reasons set forth below, the motion is **GRANTED**. The Court finds *pro se* Defendant, Stephan D. Cotton ("Cotton"), to be in wrongful possession of the property located at 119 Sprunger Drive, Wanatah, Indiana 46390 and hereby **ORDERS** him to vacate the premises of said property.

BACKGROUND

Prior to December 29, 2008, Defendant, Cotton, owned the real estate located at 119 Sprunger Drive, Wanatah, Indiana 46390 ("Property") which was subject to a mortgage by 1st Source Bank and a second mortgage by the USDA. (Compl., ¶ 3.) Cotton is an African American male who also purports to be half Blackfeet

Indian. (DE #13-1, p. 3.) On December 29, 2008, 1st Source Bank filed a complaint in LaPorte Circuit Court to foreclose on Cotton's mortgage for failure to make payments due on the mortgage. (Compl. ¶ 4.)

On June 22, 2009, the LaPorte Circuit Court entered a finding that 1st Source Bank's mortgage lien was superior to all other liens and claims, ordered foreclosure of the mortgage, and authorized the Sheriff of LaPorte County, Indiana, to sell the Property at a foreclosure sale. (Compl., at ¶ 5, Ex. 1, Summary Judgment.) On October 15, 2009, the Property was sold at a foreclosure sale to Lake County Trust P-4274, Dunes Realty, LLC, and Grey Dog Investments, LLC (hereinafter "Sheriff's Sale Purchasers"). (Compl., at ¶ 6, Ex. 2, Sheriff's Deed and Sales Disclosure Form.)

On October 6, 2010, the United States exercised its redemption rights under federal law by negotiating and agreeing to a redemption of the Property with the Sheriff's Sale Purchasers. (Compl., at ¶ 7.) Pursuant to the agreement, the Sheriff's Sale Purchasers signed a Quitclaim Deed transferring their interest in the Property to the United States. (*Id.*, Ex. 3, Quitclaim Deed.) In exchange for the Quitclaim Deed, the United States paid the Sheriff's Sale Purchasers an amount equal to what they had paid for the Sheriff's Deed at the foreclosure sale plus interest. (*Id.*) The United States subsequently recorded the Quitclaim Deed in the

LaPorte County, Indiana Recorder's Office. (*Id.*)

On October 21, 2010, the USDA sent to Cotton, by Certified United States mail, a notice to vacate the premises of the Property within thirty days. (*Id.*, at ¶ 8, Ex. 4, Notice to Vacate.) Cotton did not vacate the premises as instructed and continues to occupy the Property to this day. (Compl., at ¶ 9.)

On August 5, 2011, the United States properly notified Cotton that it had filed a motion for judgment on the pleadings against him and correctly advised him of his right to file a brief in response to its motion. (DE #12.) Cotton timely filed his response brief on August 17, 2011 (DE #13), after which the United States timely filed its reply (DE #16). Because the matter has been fully briefed, the motion is ripe for adjudication.

DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b) . . . ." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *see also R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). Where the plaintiff moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Auth. Risk*

*Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (quotation omitted). In ruling on a motion for judgment on the pleadings, the court must accept as true "all well-pleaded allegations" and view them in the light most favorable to the nonmoving party, as well as accept as true all reasonable inferences to be drawn from the allegations. *R.J. Corman*, 335 F.3d at 647; *see also Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) (providing that written instruments attached as exhibits to a pleading are a part of the pleading for all purposes).

Pursuant to 28 U.S.C. § 2410(c), "[w]here a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem [the real estate] . . . ." Additionally, as a general rule, the determination of property rights is governed by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979); *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009). Indiana recognizes that "[o]ne of the time-honored principles of property law is the absolute and unconditional right of private property owners to

exclude from their domain those entering without permission." *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1113 (Ind. 2010) (citing *Bailey v. Washington Theatre Co.*, 34 N.E.2d 17, 19 (Ind. 1941)).

Therefore, to prevail on its motion, the United States must prove the following beyond a doubt: that First Source Bank's lien on the Property stood in first priority, ahead of the USDA's; that it timely exercised its redemption right in the Property; and that it followed the proper procedures under Indiana law to perfect legal title in the Property. The evidence conclusively establishes that the United States has met its burden.

The priority of First Source Bank's mortgage lien on the Property over that of the USDA's was determined by the LaPorte Circuit Court in the foreclosure proceedings initiated by First Source Bank. The United States' right to redeem the Property vested upon its sale to the Sheriff's Sale Purchasers on October 15, 2009. The United States subsequently exercised its right to redeem the Property within one year by purchasing it via quitclaim deed from the Sheriff's Sale Purchasers on October 6, 2010. The United States then promptly recorded the quitclaim deed that very same day with the LaPorte County, Indiana Recorder's Office which served to perfect its legal title in the Property. Therefore, as the owner of an undivided fee simple interest in the Property, the United States is entitled to permit, or exclude, whomever it

5

desires from the property; including Cotton.

Rather than contest the United States' compliance with the legal formalities in acquiring the Property, Cotton grounds his attack in notions of equity, asserting that the United States does not have "clean hands." Specifically, Cotton contends that the USDA had an obligation to intervene on his behalf and to provide him with legal representation and advice in the state court mortgage foreclosure proceedings with First Source Bank. Additionally, Cotton asserts that because the USDA previously defended against allegations of race discrimination in a class action lawsuit, this alleged misconduct should either be imputed or presumed into the context of the instant case.

The equitable doctrine of "unclean hands" is recognized in Indiana property law as "demand[ing] that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court." *Hardy v. Hardy*, 910 N.E.2d 851, 856 (Ind. Ct. App. 2009) (citing *Galloway v. Hadley*, 881 N.E.2d 667, 678 (Ind. Ct. App. 2008)). This means that "[t]he alleged wrongdoing must have an immediate and necessary relation to the matter being litigated" and it must be intentional. (*Id.* at 856-57.) It is important to note that, "[t]he doctrine [of unclean hands] is not favored by the courts and is applied with reluctance and scrutiny." (*Id.* at 857.) In the instant case, neither the actions of the United States nor those of the USDA make it inequitable for the Court to order the

relief requested by the United States.

As an initial matter, while the USDA may have an obligation under federal law to assist minority and impoverished individuals in their efforts to obtain affordable housing, it does not follow that this obligation extends so far as to require providing free legal services to those persons. This is especially true when the legal services are for a mortgage that is being serviced by a private lender and not the USDA.

In support of the contention that this Court should impute or presume race discrimination by the USDA, Cotton relies on *Pigford v. Glickman* and its progeny ("*Pigford* Cases") for the proposition that past discrimination by the USDA against certain African Americans suggests that the same has been done to him. *See Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), *enforcement denied by Pigford v. Schafer*, 536 F. Supp. 2d 1 (D.C.C. 2008); *see also In re Black Farmers Discrimination Litigation*, Misc. No. 08-0511, 2011 WL 5117058 (D.D.C. Oct. 27, 2011 *amended* Nov. 10, 2011). Cotton's reliance on the *Pigford* Cases is misplaced, and his argument fundamentally flawed.

Aside from not being controlling authority on this Court, the *Pigford* Cases were not decided on the merits. Instead, these cases represent the discussion and subsequent decision to approve a proposed settlement agreement for a class action lawsuit which listed various criteria each plaintiff would have to prove before

7

being entitled to relief. Moreover, the plaintiffs in the *Pigford Cases* had alleged racial discrimination in applying for mortgage loans. By contrast, Cotton applied for, and received a mortgage from the USDA without complications.

Even assuming discrimination by the USDA in the *Pigford* Cases, the argument that Cotton derives from his reliance on those cases is fundamentally flawed in that it asks this Court to indulge in the logical fallacy of *post hoc ergo propter hoc* (translated, "after this, therefore because of this"). Simply put, Cotton invites this Court to entertain a presumption that because the USDA discriminated against similarly situated persons in the past, it necessarily follows that he too was a victim of discrimination. Because the evidence in the pleadings does not substantiate this allegation, the Court is not inclined to leap to such a conclusion.

CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**. The Court hereby finds the Defendant, Stephan D. Cotton, to be in wrongful possession of the property located at 119 Sprunger Drive, Wanatah, Indiana 46390 and **ORDERS** him to vacate the premises of said property.

**DATED: January 3, 2012**         /s/ RUDY LOZANO, Judge
                                   **United States District Court**